UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JERRY GLENN THOMPSON, JR,

                Plaintiff,

    v.

ERIC NELSON,

                Defendant.

CASE NO. 3:21-CV-5573-TL-DWC

REPORT AND RECOMMENDATION

Noting Date: December 30, 2022

This matter is before the Court on referral from the District Court and on Defendant Eric Nelson's Motion for Summary Judgment. Dkt. 31.

Plaintiff Jerry Glenn Thompson, who is incarcerated at the Stafford Creek Corrections Center ("SCCC"), brings suit under 42 U.S.C. § 1983 alleging that Defendant Nelson was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges that Defendant Nelson denied or delayed medical treatment to him for symptoms of H. Pylori.

Defendant Nelson has moved for summary judgment, arguing that Plaintiff has not alleged a viable claim and cannot show a constitutional violation occurred as a result of the

medical treatment given to Plaintiff for H. Pylori or other stomach issues. Defendant Nelson provided Plaintiff with a notice of this dispositive motion, Plaintiff has responded, and Defendant Nelson has replied. Dkts. 37, 38 and 40.

After reviewing the Motion and relevant record, the Court concludes that Plaintiff has failed to rebut Defendant Nelson's showing that there is no genuine issue of material fact regarding Plaintiff's Eighth Amendment claim. Therefore, the Court recommends Defendant Nelson's Motion for Summary Judgment (Dkt. 31) be granted, Plaintiff's Eighth Amendment claim be dismissed with prejudice, and this case be closed.

## BACKGROUND

### I.    Allegations of the Complaint

Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP"), filed his complaint in August 2021, as amended on September 8, 2021. Dkt. 9. Plaintiff alleges that Defendant Nelson, a staff Advanced Registered Nurse Practitioner ("ARNP") at Clallam Bay Corrections Center ("CBCC"), Plaintiff's former place of incarceration, violated his constitutional rights when he failed or delayed treatment for Plaintiff's symptoms of H. Pylori. *See* Dkt. 9 at 10–16. In support of this allegation, Plaintiff asserts the following:

At all times relevant, Defendant Nelson was Plaintiff's primary health care provider at CBCC. Dkt. 9 at 10. In July and August, 2019, Plaintiff was seen in CBCC's medical department for issues relating to his renal function. Dkt. 9 at 10, 23. Plaintiff claims that, at that time, he complained of bloating, lack of appetite, indigestion problems, stomach pain on the left side, acid reflux, and frequent burping. *Id*. at 10. Plaintiff claims he had another appointment in January 2020, as well as appointments on February 11, 2020 and May 11, 2020, where he presented with similar complaints. *Id*. at 10, 25, 27.

1    On June 16, 2020, Plaintiff submitted a health services kite requesting an MRI for

2 symptoms including bloating, lack of appetite, feeling full despite not eating, and nausea. *Id*. at

3 10, 29. Defendant Nelson responded to this kite on June 19, 2020, stating, "An MRI wouldn't be

4 the go to test in this case. Sign up for sick call and we can look at this problem and make a plan."

5 *Id*. at 29.

6    On June 27, 2020, Plaintiff submitted a health services kite requesting sick call for

7 symptoms including headaches, nausea, feeling like throwing up when coughing or choking,

8 bloating, lack of appetite, chest pain, and stomach issues. *Id*. at 11, 31. Defendant Nelson

9 responded to the kite on June 30, 2020, instructing Plaintiff to sign up for sick call. *Id*. at 11, 31.

10    Plaintiff was scheduled for medical appointments on July 7 and 22, 2020 to address his

11 kidney complaints, but he failed to show up. *Id*. at 11, 33. In the amended complaint, Plaintiff

12 claims he failed to appear at these appointments because they were not appointments for his

13 stomach pain and "Defendant Nelson constantly demonstrated denial and delay to reduce

14 intractable pain Plaintiff endures as it pertains to H. Pylori." *Id*. at 11.

15    Plaintiff claims he spoke with Defendant Nelson about H. Pylori during a September 13,

16 2020, medical appointment for his kidney complaints. *Id*. Plaintiff stated, "My son's mom

17 Googled the symptoms that I have. I think I have H. Pylori. The symptoms I've told you about

18 match that of H. Pylori." *Id*. Plaintiff claims that Defendant Nelson responded, "You haven't

19 described the symptoms of H. Pylori. You must have a gastric ulcer before I can test you for H.

20 Pylori. You're not telling me any signs of a gastric ulcer. Stay off the internet." *Id*.

21    On September 20, 2020, Plaintiff submitted a health services kite requesting a test for H.

22 Pylori. *Id*. at 11, 35. In the request, he listed symptoms including acid reflux, stomach aches,

23 burning pain in kidney/abdominal area, nausea, loss of appetite, bloating, and frequent burping.

24

*Id*. at 11, 35. Certified Physician's Assistant ("PA-C") J. Peterson responded to the request, noting "You were a no-show 7/7 & 7/22/20. Sign up for sick call." *Id*. at 11, 35. Plaintiff claims in his amended complaint that, even though PA-C Peterson noted these no-shows, she failed to recognize that those appointments were not for Plaintiff's stomach pain, "thus, Plaintiff's being a no-show on 7/7/20 and 7/22/20 does not excuse the Defendant's failure to act." *Id*. at 12.

On September 23, 2020, Plaintiff signed up for sick call. *Id*. at 12. He saw Defendant Nelson the next day, September 24, 2020, and presented with symptoms including bloating, indigestion, nausea, coughing, burping, blood in stool, and burning pain on his left side. *Id*. at 37. Defendant Nelson prescribed omeprazole, and ordered various tests, including one for H. Pylori. *Id*. at 12, 37. The labs for all the tests were drawn on that same day. *Id*. at 37.

On October 1, 2020, Plaintiff's lab tests returned positive for H. Pylori. *Id*. at 12, 39. Defendant Nelson notified Plaintiff of the results on October 2, 2020. *Id*. at 12, 40. At that time, Defendant Nelson prescribed two antibiotics, increased Plaintiff's dosage of omeprazole, and informed Plaintiff that he would schedule a follow-up appointment for three weeks and would repeat the H. Pylori test at that time. *Id*. at 40. On October 11, 2020, Plaintiff began a 14-day course of treatment for H. Pylori with the medications metronidazole, clarithromycin, and omeprazole. *Id*. at 12, 42–44.

On November 5, 2020, Plaintiff submitted a health services kite requesting another test for H. Pylori due to frequent burping, acid reflux, bloating, and pain in his stomach area. *Id*. at 12, 46. Defendant Nelson responded to the request on November 6, 2020, stating, "I am making a follow up appointment for you but if you are feeling ill sign up for sick call as it will be quicker and if it's the same GI problem you won't be charged." *Id*. at 46. Plaintiff took a follow up test

for H. Pylori on November 17, 2020, and Defendant Nelson notified him on November 19, 2020, that the result of the test was negative for H. Pylori. *Id*. at 13, 48–49.

Three days after receiving those test results, on November 22, 2020, Plaintiff submitted a health services kite requesting another test for H. Pylori. *Id*. at 13, 51. In the request, Plaintiff noted that, even though the test "is alleged to be negative," he preferred another test due to his continued symptoms of bloating, indigestion, frequent burping, and stomach and kidney pain. *Id*. at 51. Plaintiff stated, "I continue to be delayed in regards to my pain in left stomach/kidney, etc. area not being considered to discover the problem." *Id*. PA-C Peterson responded to the request on November 23, 2020, informing Plaintiff that he had an upcoming appointment on December 1, 2020. *Id*. at 13, 51.

Plaintiff claims that, during that December 1, 2020, appointment, Defendant Nelson told him, "Your pain is not life threatening. It's normal with H. Pylori," and then "disregarded medication treatment." *Id*. at 13. On December 2, 2020, Defendant Nelson provided a further response to Plaintiff's health services kite from November 22, 2020, stating, "As we discussed yesterday, your H. Pylori test is now negative. I understand that you are still having some reflux symptoms. You can continue to use antiacid tablets such as "Tums". I have also attached some suggestions for controlling the symptoms without medication. If you have any questions feel free to kite me or come in at sick call." *Id*. at 53.

On December 3, 2020, Plaintiff submitted a health services kite complaining of his continued symptoms of bloating, lack of appetite, and pain in the left stomach area. *Id*. at 13, 55. He requested that Defendant Nelson diagnose him with a peptic ulcer "to assist me in discovering another source of my stomach problem." *Id*. at 55. Defendant Nelson responded to

1    the request on December 4, 2020, informing Plaintiff that he was scheduled for a follow up

2    appointment. *Id*. at 13, 55.

3            On January 20, 2021, Dr. William Aurich, a medical doctor for the DOC, met with

4    Plaintiff about his administrative grievances regarding his stomach pain. *Id*. at 13, 57. When Dr.

5    Aurich asked about the pain, Plaintiff responded, "I feel pain on my left side throughout the day

6    but it's more excruciating when I wake up in the a.m." *Id*. at 13. In response to Dr. Aurich's

7    inquiry as to how he deals with the pain, Plaintiff replied, "I'm strong. I do my best to tolerate it

8    considering I'm forced to suffer by not receiving pain medication." *Id*. Further, in his report on

9    this meeting Dr. Aurich noted that, after Plaintiff completed treatment for H. Pylori, he reported

10   his pain "eased up a little bit," and that the pain is "basically a morning pain which goes away as

11   soon as he gets up and moves around." *Id*. at 57. Upon examination, Dr. Aurich noted Plaintiff is

12   a "robust ambulatory gentleman in no acute distress he is in no pain," and he "localizes pain just

13   to the left splenic flexure." *Id*. He directed the scheduler to "obtain a complete abdominal

14   ultrasound and renal ultrasound to rule out renal pathology and see if we can shed some light on

15   his chronic left upper quadrant pain which I am not convinced is GI related." *Id*.

16           On February 17, 2021, Plaintiff submitted a health services kite to Dr. Aurich

17   complaining of sharp pain on his left side and requesting omeprazole to reduce the pain. *Id*. at

18   13–14, 59. Dr. Aurich responded on February 25, 2021, informing Plaintiff that he would re-

19   order the omeprazole, and that the ultrasound had been approved and medical was working to

20   schedule it with custody and the hospital. *Id*. at 14, 59.

21           Finally, the Court notes that, in addition to the allegations in the amended complaint,

22   Plaintiff has attached a number of exhibits, including his grievances and responses thereto

23   regarding his diagnosis of, and treatment for, H. Pylori. *See* Dkt. 9 at 18–21. In his grievances,

24

1    Plaintiff asserts that since mid-2019 and early 2020, he informed Defendant Nelson of his

2    symptoms and need for a diagnosis of H. Pylori. *See id.* at 18. He claims Defendant Nelson

3    delayed or ignored his need for that diagnosis. *Id.* The CBCC Grievance Coordinator's initial

4    response noted that, upon review of Plaintiff's medical file, the first mention of H. Pylori was on

5    September 24, 2020. *See id.* On appeal, however, the DOC official recognized that Plaintiff first

6    mentioned his symptoms potentially related to H. Pylori in June 2020, but was not diagnosed and

7    treated for H. Pylori until September 2020. *Id.* at 20, 21. The official stated that there did appear

8    to be a "slight delay" in Plaintiff being diagnosed with H. Pylori from June to September 2020,

9    but also noted that Plaintiff had missed several appointments during that time period that may

10   have impacted that delay. *Id.* at 20.

11   **II.    Defendant's Evidence**

12       In support of his motion for summary judgment, Defendant Nelson has submitted his own

13   declaration, as well as declarations from Jacqueline Ahrens, a Health Services Manager 1 at

14   CBCC; Dr. Aurich; Salina Brown, a Corrections Specialist 2 at SCCC; and, Debra Lefing,

15   Assistant Attorney General and Defendant Nelson's counsel.[1] Dkts. 32–36. Declarant Ahrens

16   states that an Offender Health Plan ("OHP") was in place at CBCC at the time of Plaintiff's

17   allegations in 2020 and 2021. Dkt. 32 at 3 (Ahrens Decl.). Under the OHP in effect at that time,

18   offenders could access health care by (1) signing up for sick call, (2) sending a written request

19   ("kite") to health services, or (3) reporting an emergency to a staff member. *Id.* at 2.

20       More specifically, under the OHP, if the offender presents with complaints deemed by a

21   licensed medical staff member to be non-emergent, the staff member would instruct the offender

22   

23       [1] True and correct copies of excerpts from Plaintiff's July 27, 2022 deposition, and excerpts from Plaintiff's
     April 22, 2022 responses to Defendant Nelson's request for admissions are attached to Attorney Lefing's

24   declaration. *See* Dkt. 36, Exs. 1, 2.

1  to sign up for sick call. *Id.* At CBCC, offenders can sign up on their unit's sick call sheets for

2  appointments on Monday through Friday, and in most cases those appointments take place the

3  following business day. *Id.*

4         Offenders can also submit a health services kite, which is used for questions offenders

5  have about medical care, medical appointments, how to pay for medical care, to set up dental

6  appointments, and to set up mental health appointments. *Id.*

7         Finally, offenders can declare a medical emergency any day of the week by informing

8  any CBCC staff member. *Id.* If the situation is determined to be emergent, the offender is then

9  taken to the medical clinic immediately. *Id.* If the offender reports the emergency to a staff

10  member rather than a medical provider, protocol requires that the staff member contact the

11  medical clinic to determine whether the reported situation constitutes a medical emergency. *Id.*

12  An offender reporting a health emergency will not be denied access to health care. *Id.*

13         When offenders arrive at CBCC, they are provided with an operational memorandum

14  containing information on how to sign up for sick calls, when to use sick calls, what kites are

15  used for, how to fill out a kite, and how to declare a medical emergency. *Id.* at 3. Offenders are

16  also provided with documents about the health care available at CBCC, a more specific

17  memorandum about when they should sign up for sick call, and a Health Services Orientation

18  Handbook about health care services at DOC facilities. *Id.*

19         Turning to Plaintiff's complaints, at his deposition, Plaintiff testified that he began

20  experiencing renal issues in 2016 or 2017. Dkt. 36 at 9, Ex. 1 (Thompson Dep.). Plaintiff opined

21  that his issues related to dehydration because "[i]f I don't drink two-and-a-half quarts of water or

22  two quarts of water, I feel pain in my kidney area." *Id.* at 8–9. He described the pain as "left

23

24

1  plank pain," or pain in his left kidney that occurs when he drinks less water than a "dehydrant,

2  such as coffee." *Id.* at 10–11.

3          Defendant Nelson states that Plaintiff had medical appointments with him on January 31,

4  2020, and February 11, 2020, but Plaintiff did not complain of any abdominal pain, nausea, or

5  bloating at these appointments. Dkt. 35 at 3. Plaintiff did have appointments on May 6, 2020,

6  and May 11, 2020, with other CBCC medical providers where he reported complaints of

7  abdominal pain, bloating, and nausea. *Id.* At Plaintiff's May 11, 2020 appointment, the medical

8  provider noted Plaintiff's complaint of left flank pain, but stated Plaintiff did not have any new

9  issues. *Id.*

10          Plaintiff notified CBCC medical staff of his symptoms of feeling bloated, nauseous, and

11  lack of appetite, when he submitted a health services kite on June 16, 2020, requesting an MRI

12  for these symptoms. Dkt. 36 at 61. Defendant Nelson responded to the kite, stating, "An MRI

13  wouldn't be the go to test in this case, sign up for sick call and we can look at this problem and

14  make a plan." *Id.* Plaintiff did not schedule a sick call so Defendant Nelson did not see him at

15  that time. Dkt. 35 at 4. When Plaintiff submitted another health services kite about two weeks

16  later requesting to be seen because of headaches, feeling like throwing up, and lacking an

17  appetite, Defendant Nelson again responded by asking Plaintiff to sign up for sick call. Dkt. 36 at

18  17–18. Plaintiff did not sign up for sick call, but from a reading of his deposition response, it

19  appears that he thought he was signing up for sick call through the use of the kite system. *Id.* at

20  18. Further, Plaintiff did not appear for another medical appointment scheduled for July 7, 2020,

21  because, as he testified at his deposition, Defendant Nelson was not considering his complaints

22  in person and was not taking Plaintiff seriously. Dkt. 36 at 19.

23

24

1    Defendant Nelson submits that, from June 2020 to September 2020, Plaintiff did not

2  complain of pain but noted a lack of appetite, nausea, and feeling bloated. *See* Dkt. 36 at 63–65.

3    On September 20, 2020, Plaintiff submitted a health services kite complaining of burning

4  pain in the kidney/abdominal area and burping, and requested a test for H. Pylori. *Id*. at 67. PA-C

5  Peterson responded on September 21, 2020, asking Plaintiff to sign up for sick call. *Id*. Plaintiff

6  scheduled a sick call and met with Defendant Nelson on September 24, 2020. *See id*. at 69. In his

7  primary encounter report, Defendant Nelson noted that Plaintiff felt bloated, had nausea,

8  indigestion, was coughing and burping, and had a burning pain on the left side of his stomach.

9  Dkt. 35 at 4. Defendant Nelson declares that Plaintiff never complained of intractable pain;

10  rather, his symptoms matched those of multiple other problems and gastrointestinal ("GI") upset,

11  which is one of the most common problems medical professionals see at CBCC. *Id*. At this

12  appointment, Defendant Nelson prescribed omeprazole and ordered a test for H. Pylori, which

13  was conducted that day. *Id*. Plaintiff's test came back positive for H. Pylori. *Id*. As a result,

14  Defendant Nelson prescribed two antibiotics and increased Plaintiff's dosage of omeprazole. *Id*.

15    Declarant Dr. Aurich notes that about 30 to 40 percent of people in the United States get

16  an H. Pylori bacterial infection, with most people contracting it as a child. Dkt. 33 at 2. For most

17  people, H. Pylori does not cause symptoms, but if the infection causes the inner protective

18  coating of the stomach to break down and cause inflammation, this can lead to gastritis or a

19  peptic ulcer. *Id*. In addition, testing for H. Pylori is not typically needed for symptoms of acid

20  reflux or heartburn, and an infection would not be deemed an emergency condition. *Id*.

21  Defendant Nelson also notes that studies have found about 40 percent of the population have had

22  H. Pylori and the majority show no symptoms. Dkt. 35 at 5. Here, Plaintiff testified that he took

23

24

1   the medications prescribed to him by Defendant Nelson and about two weeks to a month after

2   the treatment, he started to feel better. Dkt. 36 at 22.

3   Less than a month later, Plaintiff submitted another health services kite claiming "I need

4   another test" for H. Pylori because he had frequent burping, bloating, and acid reflux. *See* Dkt.

5   36 at 78. Defendant Nelson ordered another test for H. Pylori soon thereafter and it came back

6   negative. Dkt. 35 at 5. Three days after getting the results, Plaintiff submitted another health

7   services kite requesting another H. Pylori test because the previous test "is alleged to be

8   negative." *Id*.; Dkt. 36 at 83. In response to this kite, Defendant Nelson met with Plaintiff on

9   December 1, 2020, and confirmed for him that his H. Pylori test was negative, recommended that

10  he continue taking Tums for acid reflux problems, and provided suggestions for controlling his

11  symptoms without medications. Dkt. 35 at 5; Dkt. 36 at 85.

12  Dr. Aurich met with Plaintiff on January 20, 2021, to discuss Plaintiff's grievances. Dkt.

13  33 at 2. Plaintiff told him that, since he completed the treatment for H. Pylori, he thinks the pain

14  in his left upper quadrant has eased and his appetite may have improved. *Id*. Dr. Aurich

15  examined Plaintiff and noted that his abdomen was soft, non-tender, and presented no medical

16  concerns. *Id*. He also noted that Plaintiff was not in acute distress nor in any pain. *Id*. However,

17  Dr. Aurich ordered a complete abdominal ultrasound and renal ultrasound to "shed some light on

18  his upper quadrant area." *Id*. The results of Plaintiff's ultrasound were normal. *Id*. at 3. In his

19  declaration, Dr. Aurich states that at no time from June 2020 to February 2021 did Plaintiff have

20  an ulcer or stomach cancer, or appear to have any problem that came even close to a medical

21  emergency. *Id*.

22  In his deposition, Plaintiff testified that he currently takes Lisinopril for high blood

23  pressure and omeprazole for acid reflux. Dkt. 36 at 11. He stated he does not currently have

24

1   stomach ulcers and has never been diagnosed with stomach cancer or inflammation of the

2   stomach. *Id*. at 11. He stated he still has a lack of appetite, but no bloating, frequent burping,

3   nausea, or vomiting. *Id*.

4                                    **DISCUSSION**

5   **I.    Legal Standard – Summary Judgment**

6          "The court shall grant summary judgment if the movant shows that there is no genuine

7   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8   Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in

9   the light most favorable to the nonmoving party and must draw all reasonable inferences in that

10  party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party

11  has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion "must do more

12  than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

13  *Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

14         The opposing party cannot rest solely on his pleadings but must produce significant,

15  probative evidence in the form of affidavits, and/or admissible discovery material that would

16  allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249–50. Conclusory

17  allegations and mere speculation are not enough to create a genuine issue of material fact. *See,*

18  *e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The

19  purpose of summary judgment "is not to replace conclusory allegations of the complaint or

20  answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

21  888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address

22  another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary

23  judgment if the motion and supporting materials—including the facts considered undisputed—

24

1    show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3). Finally, because plaintiff is *pro*

2    *se*, the Court "must consider as evidence in his opposition to summary judgment all of

3    [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on

4    personal knowledge and set forth facts that would be admissible in evidence, and where

5    [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true

6    and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

7    **II.    Eighth Amendment Claim**

8            Defendant Nelson contends he is entitled to summary judgment on Plaintiff's claim of

9    inadequate medical treatment in violation of the Eighth Amendment. Dkt. 31 at 9–15.

10           "It is undisputed that the treatment a prisoner receives in prison and the conditions under

11    which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*,

12    509 U.S. 25, 31 (1993). "A violation of the Eighth Amendment occurs when prison officials are

13    deliberately indifferent to a prisoner's medical needs." *Toguchi v. Chung*, 391 F.3d 1051, 1057

14    (9th Cir. 2004); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

15    **A.    Serious Medical Need**

16           To prevail on an Eighth Amendment claim predicated on the denial or delay of medical

17    care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's

18    response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

19    2006); *see also Estelle*, 429 U.S. at 106. To establish a serious medical need, the plaintiff must

20    show that the "failure to treat [the] . . . condition could result in further significant injury or the

21    unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (citation omitted). "The

22    existence of an injury that a reasonable doctor or patient would find important and worthy of

23    comment or treatment; the presence of a medical condition that significantly affects an

24

1    individual's daily activities; or the existence of chronic and substantial pain are examples of

2    indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974

3    F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*,

4    104 F.3d 1133, 1136 (9th Cir. 1997). A "serious" medical need is not confined to a horrific

5    situation involving pain that is tantamount to "physical torture or a lingering death." *Estelle*, 429

6    U.S. at 103. If the injury or illness would result in further significant injury or unnecessary and

7    pointless infliction of pain if not treated, it is serious. *Id.*

8         Here, the Court will assume, for purposes of analysis, that a reasonable juror could

9    conclude that Plaintiff had abdominal pain that constituted a serious medical need. The record

10   supports a reasonable finding that this condition caused Plaintiff serious pain over an extended

11   period. Furthermore, Plaintiff received treatment for this condition from medical professionals

12   while in DOC custody. So the Court will anlayze whether Defendant Nelson was deliberately

13   indifferent to this medical need of Plaintiff.

14        **B.    Deliberate Indifference**

15        If a plaintiff shows he suffered from a serious medical need, he must then show the

16   prison officials reponded to the need with deliberate indifference. *See Farmer v. Brennan*, 511

17   U.S. 825, 834 (1994). Deliberate indifference to a prisoner's serious medical need requires "a

18   purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In

19   other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or

20   possible medical need." *Id*. A prison official, accordingly, will not be found deliberately

21   indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an

22   excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be

23

24

1 │ aware of facts from which the inference could be drawn that a substantial risk of serious harm

2 │ exists, and he must also draw the inference." *Id*.

3 │       Deliberate indifference may exist when prison officials "deny, delay or intentionally

4 │ interfere with medical treatment, or it may be shown by the way in which prison physicians

5 │ provide medical care." *McGuckin*, 974 F.2d at 1059 (internal quotations and citations omitted).

6 │ However, a plaintiff must demonstrate that the delay led to further injury. *See id*. at 1060.

7 │       However, "[m]ere negligence in diagnosing or treating a medical condition, without

8 │ more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson*, 838 F.2d at 394.

9 │ Further, "a mere difference of medical opinion . . . [is] insufficient, as a matter of law, to

10 │ establish deliberate indifference." *Toguchi*, 391 F.3d at 1058 (alterations in original) (citation

11 │ omitted). This rule applies whether the indifference is between medical professional(s) and a

12 │ prisoner or two or more medical professionals. *See, e.g.*, *Hamby v. Hammond*, 821 F.3d 1085,

13 │ 1092 (9th Cir. 2016) (citation omitted).

14 │       Here, in his amended complaint, Plaintiff claims that his pleas for medical attention for

15 │ his symptoms which amounted to H. Pylori were either ignored, denied, or delayed for a year

16 │ before Defendant Nelson responded to Plaintiff with testing and treatment. Dkt. 9 at 15–16.

17 │ Again, while the Court will consider, for purposes of analysis, that Plaintiff's stomach issues

18 │ constituted a serious medical need, the Court finds there is no genuine issue of material fact

19 │ showing Defendant Nelson acted with deliberate indifference to Plaintiff's serious medical

20 │ needs.

21 │       Evidence related to Defendant Nelson shows that, on June 16, 2020, Plaintiff submitted a

22 │ health services kite requesting an MRI for symptoms including bloating, lack of appetite, feeling

23 │ full despite not eating, and nausea. Dkt. 36 at 61. Plaintiff opined that he may have a stomach

24 │

REPORT AND RECOMMENDATION - 15

ulcer, but did not mention H. Pylori. *Id*. Defendant Nelson responded to the request on June 19, 2020, stating: "An MRI wouldn't be the go to test in this case, sign up for sick call and we can look at this problem and make a plan." *Id*. In response, Plaintiff did not sign up for sick call. *See* Dkt. 35 at 4. On June 27, 2020, Plaintiff submitted another health services kite describing similar symptoms and requesting sick call. Dkt. 9 at 11, 31. On June 30, 2020, Defendant Nelson responded to the kite, instructing Plaintiff to sign up for sick call. *Id*. at 11, 31. In response, Plaintiff did not sign up for sick call and, in fact, intentionally skipped two medical appointments in July 2020. *Id*. at 11, 33.

Plaintiff alleges in his amended complaint that he spoke with Defendant Nelson about the possibility of a diagnosis of H. Pylori during a September 13, 2020, medical appointment for his kidney complaints. Dkt. 9 at 11. According to Plaintiff, Defendant Nelson responded that Plaintiff's symptoms did not equate to a H. Pylori diagnosis and did not perform a test that day. *Id*. The evidence shows that, on September 20, 2020, Plaintiff submitted a health services kite that mentions for the first time a request for a test for H. Pylori. Dkt. 9 at 35. When Plaintiff subsequently signed up for sick call on September 23, 2020, Defendant Nelson saw him the next day, September 24, 2020. *Id*. He noted Plaintiff's symptoms but observed that they matched those of multiple other problems and GI upset, which is one of the most common problems at CBCC. Dkt. 35 at 4. Nevertheless, Defendant Nelson prescribed omeprazole and ordered tests, including one for H. Pylori. Dkt. 9 at 12, 37. When the test results for H. Pylori came back positive on October 1, 2020, Defendant Nelson prescribed two antibiotics, increased Plaintiff's dosage of omeprazole, and discussed a follow-up appointment and repeat H. Pylori test with Plaintiff. *Id*. at 40. After Plaintiff started his course of treatment on October 11, 2020, he continued to complain to Defendant Nelson about pain and the need for further H. Pylori testing,

1   and Defendant Nelson timely responded with information about follow-up appointments and

2   testing. *Id*. at 42–44; 46; 48–49; 51; 53; 55. Notably, Plaintiff's repeat test for H. Pylori on

3   November 17, 2020, came back negative. *Id*. at 48–49.

4          This evidence—including Plaintiff's health services kites from June and September 2020

5   that described Plaintiff's symptoms, Defendant Nelson's responses to those kites, Defendant

6   Nelson's observation that Plaintiff's symptoms match those of multiple other problems and GI

7   upset, and Plaintiff's failure to attend scheduled medical appointments during that time period—

8   indicates that Defendant Nelson did not believe at that time that Plaintiff's symptoms amounted

9   to a diagnosis of H. Pylori. Accordingly, the evidence shows there is no genuine dispute of

10  material fact that Defendant Nelson did not "draw the inference" that not testing Plaintiff for H.

11  Pylori would place Plaintiff at risk. *See Farmer*, 511 U.S. at 837.

12         Further, although the evidence shows that Plaintiff began requesting a test for H. Pylori

13  as early as June 2020 and did not get that test until September 2020, Plaintiff's requests reflect a

14  difference of opinion regarding the proper treatment for Plaintiff's stomach issues, and as such,

15  do not demonstrate a deliberate indifference to his serious medical needs. Again, according the

16  the Ninth Circuit, a difference of medical opinion, "'[is] insufficient, as a matter of law, to

17  establish deliberate indifference.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90

18  F.3d 330, 332 (9th Cir. 1996)). Plaintiff must demonstrate instead "that the chosen course of

19  treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious

20  disregard of an excessive risk to [the prisoner's] health.'" *Id.*, 391 F.3d at 1058 (citing *Jackson*,

21  90 F.3d at 332). Based on the evidence presented on summary judgment, no reasonable jury

22  would make such a finding here.

23

24

1    Moreover, to establish deliberate indifference based on a delay of medical treatment, a

2    plaintiff must demonstrate that the delay led to further injury. *See Hallett v. Morgan*, 296 F.3d

3    732, 745–46 (9th Cir. 2002). Plaintiff cannot demonstrate further injury here. Rather, the

4    evidence shows that, when Plaintiff tested positive for H. Pylori, Defendant Nelson prescribed

5    two antibiotics and increased the dosage of omeprazole. Dkt. 9 at 40. After the 14-day course of

6    treatment, Plaintiff informed Dr. Aurich that his pain had eased and his appetite may have

7    improved. Dkt. 33 at 2. He also testified that he started feeling better about two weeks to a month

8    or so after the treatment and was able to eat more. Dkt. 36 at 22. In his amended complaint,

9    Plaintiff alleges that Defendant Nelson's delay in treatment exposed him to a more serious risk

10    of stomach injury (*see* Dkt. 9 at 15); however, Plaintiff testified that he does not currently have

11    stomach ulcers and has never been diagnosed with stomach cancer or inflammation of the

12    stomach (*see* Dkt. 36 at 12). Thus, Plaintiff has failed to show Defendant Nelson was

13    deliberately indifferent to his serious medical need with respect to any delay in treatment for H.

14    Pylori.

15    In sum, even viewed in the light most favorable to him, Plaintiff has failed to show that

16    Defendant Nelson acted with deliberate indifference to Plaintiff's serious medical need. *See*

17    *Farmer*, 511 U.S. at 837. Accordingly, the Court recommends that Defendant Nelson's Motion

18    for Summary Judgment be granted and Plaintiff's claim under the Eighth Amendment against

19    Defendant Nelson be dismissed with prejudice.

20    **III.    Qualified Immunity**

21    Defendant Nelson asserts that, even if Plaintiff has presented evidence sufficient to

22    survive a motion for summary judgment on his § 1983 claim, qualified immunity nonetheless

23    protects him from liability for damages.

24

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Qualified immunity is an affirmative defense to damages liability and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). The Court must decide the qualified immunity issue at the summary judgment stage when the issue turns on questions of law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The Court can analyze the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In considering the first prong, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, viewed in the light most favorable to Plaintiff, the facts do not show that Defendant Nelson's acts violated Plaintiff's Eighth Amendment rights. Accordingly, Defendant Nelson is entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

## IV.    IFP on Appeal

The Court recommends revoking Plaintiff's IFP status for purposes of an appeal of this matter. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

1   *Williams*, 490 U.S. 319, 325 (1989). Because an appeal from this matter would be frivolous, the

2   Court recommends that Plaintiff's IFP status be revoked for purposes of appeal.

3                               **CONCLUSION**

4         The undersigned recommends that Defendant Nelson's Motion for Summary Judgment

5   (Dkt. 31) be granted and that Plaintiff's Eighth Amendment claim be dismissed with prejudice.

6   The Court also recommends that Plaintiff's IFP status be revoked for purposes of any appeal.

7         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

8   shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.

9   R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

10  *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of

11  those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda*

12  *v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time

13  limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on

14  December 30, 2022, as noted in the caption.

15         Dated this 16th day of December, 2022.

16

17                            _____

18                            David W. Christel
                            United States Magistrate Judge

19

20

21

22

23

24